IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JELANIE A. JONES,                    )
                                     )
          Petitioner,                )
                                     )
v.                                   )          Civil Action No. 3:07CV780-HEH
                                     )
GENE JOHNSON,                        )
                                     )
          Respondent.                )

MEMORANDUM OPINION
(Denying 28 U.S.C. § 2254 *Pro Se* Petition)

THIS MATTER is before the Court on Petitioner's *pro se* petition for a writ of

habeas corpus, challenging his conviction in the Circuit Court of Hanover County

("Circuit Court"). Petitioner's claims in support of this petition are recited verbatim:

> Claim 1    Petitioner was denied his Fourteenth Amendment Constitutional
> right to Due Process of the Law, Fair Trial, and Equal Protection of
> the Law due to Prosecutorial Misconduct as the Commonwealth
> withheld Exculpatory Evidence from the defense (i.e. Jameed Jones
> Police Statement) in Violation of *Brady v. Maryland*, 375 U.S. 83,87
> (1963). (Mem. Supp. § 2254 Pet. 1.)
>
> Claim 2    Petitioner was denied his Sixth Amendment Constitutional right to
> Effective Assistance of Counsel (through the Fourteenth Amendment
> of the United States Constitution, and his Fifth and Fourteenth
> Amendment rights to Due Process of Law, Fair Trial and Equal
> Protection of the Law) in that:  Trial Counsel failed to call
> petitioner's alibi witness (Jameed Jones) to testify in petitioner's
> criminal trial. (*Id.* at 4.)

Respondent has moved to dismiss on the grounds that Petitioner's claims lack merit.

Petitioner has responded. The matter is ripe for adjudication.

## I. Procedural History

On December 10, 2004, Petitioner was convicted by a jury of robbery and conspiracy to commit robbery. Thereafter, Petitioner filed an appeal in the Court of Appeals of Virginia and argued that the evidence was insufficient to sustain his convictions. The Court of Appeals of Virginia denied his appeal and found that the evidence adduced at trial showed:

> On the morning of June 24, 2004, Cyndi Henry was working as a teller at the Wachovia Bank in Ashland, Virginia. While at her counter, Henry was approached by an African-American male with a dreadlocks hairstyle. . . .
>
> The man told Henry not to activate the alarm and that he was there to rob her. He told Henry to place the money in her cash drawer, including large bills, on the counter. Henry complied. Before he left the bank, the man told Henry he would kill her if she turned on the alarm before he got away. . . . The robber left the bank with about $16,000.
>
> David Palmer, a Wachovia employee, followed the robber from the bank. Palmer chased the robber as he ran to an awaiting vehicle, entered the backseat, and drove away.
>
> Renata Dabney testified that she and appellant's brother drove to Ashland the day before the robbery to locate a bank. On June 24, 2004, she drove a vehicle, with appellant's brother as a passenger, and picked up appellant. The three went to the Wachovia Bank in Ashland with the purpose of committing a robbery. Appellant's brother was wearing a black shirt and pants, a hat, and a wig. Appellant's brother entered the bank. Dabney and appellant remained in the car [which] Dabney parked in a prearranged location. Appellant moved from the backseat to the front passenger seat. . . . Seeing his brother being chased [as he exited the bank], appellant said, "go, go." Appellant reached to the backseat and opened the door for his brother.
>
> After appellant's brother entered the vehicle, Dabney drove the group away from the scene on Interstate 95. He gave some of the money from the robbery to appellant, who placed it in the glove compartment of the vehicle. He changed his clothes. When the group noticed the police were following them, appellant's brother jumped out of the vehicle.

2

The police stopped the sport utility vehicle Dabney was driving a short time later. Only Dabney and appellant were inside the car. A hat and a wig were on the floorboard of the backseat of the vehicle. The police also found a note that read, "Put the money in the bag." In the glove compartment was $1,000 in one hundred dollar bills. In the storage area of the vehicle were a firearm, black pants and a black shirt, and a map book opened to the town of Ashland.

After the stop, appellant was interviewed by Investigator C.M. Hileman. Appellant said his brother asked him the night before to ride to Ashland with him. Appellant said he did not know exactly what was planned, but he "had a pretty good idea." Appellant knew "they were going to rob something but didn't know what." Appellant admitted going to Ashland on June 24, 2004 with Dabney and appellant's brother. Investigator Hileman summarized why appellant went along: "He said it was his brother - to summarize, it was his brother, it was blood, he would pretty much do anything in the world for him to back him - I think he actually said I had his back or I had to - I have to get his back. . . ."

Testifying [o]n his own behalf, appellant stated that he believed the purpose of the trip to Ashland on June 24, 2004, was to apply for a job. Appellant said he fell asleep in the car because he had been up most of the night before working on his resume. Appellant said he did not hear his brother and Dabney discuss a robbery, and he did not know why his brother got out of the vehicle and headed toward the bank. He did not find it unusual that his brother was wearing a hat and wig. Appellant stated his brother had mentioned a robbery earlier in the week, but his brother was a "jokester" and appellant did not take him seriously. Appellant denied telling the police that he knew about the robbery in advance or that he was there to watch his brother's back. Appellant admitted having prior felony convictions.

Appellant contends the evidence did not prove he participated in the robbery or in any agreement to commit the robbery. The jury, however, accepted the Commonwealth's evidence, and rejected appellant's explanation for his presence in Ashland with his brother and Dabney.

. . .

The Commonwealth's evidence proved appellant knew his brother planned to commit a robbery on June 24, 2004, and appellant agreed to go along to protect his brother. Appellant remained in the car with Dabney while his brother went inside the bank and obtained the money. When his brother emerged from the bank with Palmer in pursuit, appellant opened the car door so his brother could get inside. After the incident, as they were

fleeing from the police, his brother gave appellant a portion of the proceeds
of the robbery.

*Jones v. Commonwealth*, No. 0502-05-2, Order 1-4 (Va. Ct. App. Feb. 2, 2006).[1] Petitioner

then moved for consideration by a three-judge panel of the Court of Appeals of Virginia, but

this motion was denied. *Jones v. Commonwealth*, No. 0502-05-2, slip op. (Va. Ct. App.

May 16, 2006). Petitioner subsequently filed a habeas petition with the Supreme Court of

Virginia, raising the same claims there as he asserts in this action. The Supreme Court of

Virginia rejected Petitioner's claims on the merits and denied his petition for relief.

Petitioner then filed his current habeas petition in this Court.

## II. Standard of Review

In order to obtain federal relief, an inmate must demonstrate that his rights under the

Constitution, laws, or treaties of the United States were violated. *Estelle v. McGuire*, 502

U.S. 62, 67-68 (1991). Furthermore, this Court's ability to grant habeas relief is

circumscribed by 28 U.S.C. §§ 2254(d) and 2254(e)(1). Under § 2254(d), a federal court

may not grant a writ of habeas corpus based on any claim adjudicated on the merits in the

state court unless the adjudicated claim

---

[1] In conducting the present federal habeas review, all of the findings of fact by the
Court of Appeals of Virginia are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *Pope v.
Netherland*, 113 F.3d 1364, 1367 (4th Cir. 1997) (citing *Sumner v. Mata*, 449 U.S. 539,
546-47 (1981)). Petitioner has the burden of rebutting that presumption by clear and
convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

4

     (1)    resulted in a decision that was contrary to, or involved an
              unreasonable application of, clearly established Federal law,
              as determined by the Supreme Court of the United States; or

     (2)    resulted in a decision that was based on an unreasonable
              determination of the facts in light of the evidence presented
              in the State court proceeding.

28 U.S.C. § 2254(d). The phrases "contrary to" and "unreasonable application of" in 28

U.S.C. § 2254(d)(1) have independent meanings. *Penry v. Johnson*, 532 U.S. 782, 792

(2001). "A decision is 'contrary to' clearly established federal law if it either applies a

legal rule that contradicts prior Supreme Court holdings or reaches a conclusion different

from that of the Supreme Court 'on a set of materially indistinguishable facts.'" *Buckner*

*v. Polk*, 453 F.3d 195, 198 (4th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362,

412-13 (2000)), *cert. denied*, 127 S. Ct. 1817 (2007). In contrast, "[a] decision is an

'unreasonable application' of clearly established federal law if it 'unreasonably applies' a

Supreme Court precedent to the facts of the petitioner's claim." *Id.* (quoting *Williams*,

529 U.S. at 413). Thus, § 2254(d) places an additional hurdle before federal habeas

petitioners—they must demonstrate not only that the state court's decision was erroneous

or incorrect, but also that it was unreasonable. *See Williams*, 529 U.S. at 412-13.

Additionally, under § 2254(e)(1), a factual finding by a state court is presumed correct

absent clear and convincing evidence to the contrary. *See Wolfe v. Weisner*, 488 F.3d

234, 239 (4th Cir. 2007).

5

### III. Analysis

#### A. *Brady* Material

In Claim 1, Petitioner claims that the government violated his constitutional rights

and *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that Petitioner's

brother, Jameed Jones, told police that "[Petitioner] did not know about the robbery until

they got to the bank." (Mem. Supp. § 2254 Pet. 1.)  Petitioner contends that this

statement was consistent with his testimony that he did not know Jones planned to rob the

bank until police advised Petitioner a robbery had occurred.  Petitioner asserts Jones's

conversation with the investigator is exculpatory evidence.

A valid *Brady* claim must show that "(1) the evidence at issue [is] favorable to the

defendant, whether directly exculpatory or of impeachment value; (2) it [was] suppressed

by the state, whether willfully or inadvertently; and (3) it [is] material." *Spicer v.*

*Roxbury Corr. Inst.*, 194 F.3d 547, 555 (4th Cir. 1999) (citing *Strickler v. Greene*, 527

U.S. 263, 281-82 (1999)).  The United States Court of Appeals for the Fourth Circuit has

advised that when a state habeas court rejects a petitioner's *Brady* claim and finds that the

"suppressed evidence was not 'material,'" then this finding is "due great deference" under

28 U.S.C. § 2254(d).  *Gregory v. Polk*, No. 05-20, 2006 WL 1877262, at *4 (4th Cir. July

7, 2006); *see also Wilkinson v. Polk*, 227 F. App'x 210, 215 (4th Cir. Apr. 5, 2007) (No.

06-3) ("[T]he rejection of this [*Brady*] claim on the merits by the [state habeas] court is

entitled to deference under the AEDPA.").

6

On state habeas, the Supreme Court of Virginia found that

> The record, including Jameed Jones' statement and the trial transcript,
> demonstrates that the statement was not material. Jameed Jones' statement
> that petitioner was unaware of the impending robbery *until* they arrived at
> the bank does not negate evidence that petitioner knew of the robbery
> *before* Jameed Jones exited the vehicle and entered the bank. Petitioner
> confessed to an investigator that he had prior knowledge of and participated
> in the robbery. Petitioner's participation in the conspiracy and the robbery
> was also supported by evidence that petitioner saw Jameed Jones wearing a
> wig, hat and sunglasses before Jameed Jones entered the bank, petitioner
> waited in the car with the driver, assisted in the getaway, and received
> $1,000 of the stolen money. Therefore, Jameed Jones' statement that
> petitioner did not know of the robbery until they arrived at the bank is not
> material because "there is no reasonable probability that the outcome of the
> proceeding would have been different had the evidence been disclosed to
> the defense." *Muhammad v. Warden*, 274 Va. 3, 3-4, 646 S.E.2d 182, 186
> (2007).

*Jones v. Dir. of the Dep't of Corr.*, Record No. 071235, Habeas Order at 2 (Va. Oct. 19,

2007) (emphasis added).

Under Virginia law, "the crime of conspiracy is complete when the parties agree to

commit an offense." *Gray v. Commonwealth*, 260 Va. 675, 680 (2000) (citing *Falden v.

Commonwealth*, 167 Va. 542, 544 (1937)). Additionally, a defendant may be convicted

as "a principal in the second degree" if he or she "was either present or keeping watch or

guard at a convenient distance." *McGhee v. Commonwealth*, 221 Va. 422, 426 n.2 (1980)

(citing *Ward v. Commonwealth*, 205 Va. 564, 568 (1964)). Jameed Jones's

statement—that Petitioner did not know about the robbery *until* they got to the bank

—was not inconsistent with the prosecution's theory of the case at trial, i.e., that

Petitioner knew of the robbery *before* it was committed. Moreover, the evidence

7

demonstrated that Petitioner was a participant in the robbery. Petitioner aided Jameed

Jones by keeping watch and then opening the car door when Jameed Jones exited the

bank. In addition, Petitioner received $1,000 of the stolen funds as compensation for his

part in the planned robbery. Petitioner has failed to demonstrate that the state habeas

court's decision, that relief was not warranted under *Brady*, was unreasonable.

Accordingly, Claim 1 will be dismissed.

### B.    Ineffective Assistance of Trial Counsel

To demonstrate the ineffective assistance of counsel, a petitioner must show both

that counsel's representation was deficient and that the deficient performance prejudiced

the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Satisfying

the deficient performance facet of *Strickland* requires the petitioner to overcome the

"'strong presumption' that counsel's strategy and tactics fall 'within the wide range of

reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir.

2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a

defendant to "show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel

claims, it is not necessary to determine whether counsel's performance was deficient if

the claim is readily dismissed for lack of prejudice. *Id.* at 697.

8

In Claim 2, Petitioner alleges that his trial counsel was ineffective for failing to call Jameed Jones to testify in his case. In dismissing this claim, the Supreme Court of Virginia stated

> [P]etitioner alleges he was denied the effective assistance of counsel because trial counsel failed to call Jameed Jones as a witness at trial and that Jameed Jones' testimony would have aided his defense. Petitioner contends that Jameed Jones would have testified that petitioner "did not know about the robbery until after the robbery occurred and until petitioner had got to the Wachovia Bank in Ashland."
>
> The Court holds that [this claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner has failed to proffer an affidavit or other statement from Jameed Jones to verify he would have testified at trial and that, if he did, his testimony would have been as petitioner contends. The record, including Jameed Jones' statement to the investigator and the transcript of Jameed Jones' [own] trial, demonstrates that Jameed Jones never stated petitioner did not know about the robbery until after it occurred, but only that petitioner may have been unaware until shortly before the robbery occurred. Furthermore, Jameed Jones asserted his own innocence during his plea colloquy. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

*Jones*, Habeas Order 2-3. The state court's legal conclusion is entitled to great deference unless the petitioner can show that the state habeas court "reached a decision contrary to, or unreasonably applied, *Strickland* and its progeny in finding that [the petitioner] had not shown that he was prejudiced by his counsel's failure." *Bowie v. Branker*, 512 F.3d 112, 120 (4th Cir. 2008); *see also* 28 U.S.C. § 2254(d)(1). On federal habeas review, a court will consider only the "'evidence presented in the State court proceeding'" in determining

whether the state habeas court's decision was "unreasonable." *Strong v. Johnson*, 495 F.3d 134, 139 (4th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(2)).

In light of the fact that Petitioner never provided the state habeas court with an affidavit from Jameed Jones verifying what he would have said at trial, the state habeas court reasonably concluded that Petitioner had not demonstrated prejudice. *See, e.g.*, *United States v. Schaflander*, 743 F.2d 714, 721 (9th Cir. 1984); *White v. Johnson*, No. 1:07cv376, 2007 WL 3378541, at *6 (E.D. Va. Nov. 7, 2007), *appeal dismissed*, No. 08-6083, 2008 WL 1815683 (4th Cir. Apr. 23, 2008); *Potts v. Hinkle*, No. 7:06cv00524, 2007 WL 1577337, at *4 (W.D. Va. May 31, 2007). Although Petitioner has now submitted an affidavit from Jones wherein he avers that Petitioner did not know about the robbery until after Jones got back in the vehicle, this Court is prohibited from considering Jameed Jones's affidavit on federal habeas review because it was not presented to the state habeas court. *See Strong*, 495 F.3d at 139; *see also Gilliam v. Simms*, No. 97-14, 1998 WL 17041, at *5-6 (4th Cir. Jan. 13, 1998) (finding federal habeas claims that "rel[y] on affidavits which were first attached to the amended federal habeas petition and were never presented to the state courts" to be unexhausted and procedurally defaulted).

Because Petitioner did not provide any materials to support his claim, the Supreme Court of Virginia reasonably determined that Petitioner did not demonstrate *Strickland*

prejudice.[2] Petitioner has thus failed to show that the state habeas court's decision was "contrary to, or involved an unreasonable application of," the *Strickland* decision and its progeny as required by 28 U.S.C. § 2254(d). *See Bowie*, 512 F.3d at 120. Accordingly, Claim 2 will be dismissed.

### IV. Conclusion

For the foregoing reasons, Respondent's motion to dismiss (Docket No. 9) will be granted. The petition for a writ of habeas corpus will be denied, and this action will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

                                                /s/

                                  Henry E. Hudson
                                  United States District Judge

Date: **Aug. 4, 2008**
Richmond, Virginia

---

[2] Indeed, in the state habeas order, the Supreme Court of Virginia noted that Jameed Jones had "asserted his own innocence" at his own trial. *Jones*, Habeas Order at 3; *see also* Resp.'s Br. Supp. Mot. to Dismiss, Ex. 3 (Excerpt of Tr. from Jameed Jones's Oct. 16, 2006 Arraignment & Trial). The fact that Jameed Jones maintained his innocence at his own trial belies any suggestion that Jameed Jones would have admitted his guilt at Petitioner's trial. Petitioner's trial was held *before* Jones's own proceeding.